# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JEREMY DAVID HANSON,<br><br>    Defendant. | Docket No. 22-CR-30013-MGM<br>Docket No. 22-CR-30038-MGM |

## GOVERNMENT'S SENTENCING MEMO

The United States of America, by and through Rachael S. Rollins, United States Attorney for the District of Massachusetts, and Assistant United States Attorney Steven H. Breslow, hereby files its Sentencing Memo for the defendant Jeremy David Hanson ("Hanson" or "the defendant").

1.  Introduction

On September 8, 2022, pursuant to a written Plea Agreement (D.32),[1] the defendant pleaded guilty to two Indictments, one filed in the District of Massachusetts (Docket No. 22-CR-30013-MGM) (the "Massachusetts Case") and one initially filed in the Eastern District of Texas and then transferred to the District of Massachusetts pursuant to Rule 20 of the Federal Rules of Criminal Procedure (Docket No. 22-CR-30038-MGM) (the "Texas Case"), each charging a single count of Interstate Transmission Of Threatening Communications in violation of 18 U.S.C. § 875(c). Pre-Sentence Report dated December 29, 2022 ("PSR"), ¶¶ 1-9.

The defendant faces the following maximum penalties on each count: five years of imprisonment followed three years of supervised release. Id., ¶¶ 107-08, 111-13. The defendant

---

[1] Unless otherwise specified, all docket entries refer to Docket No. 22-CR-30013-MGM.

also faces an advisory sentencing Guidelines range of 21 to 27 months, based upon a total offense level of 16 and a criminal history category of I.  Id., ¶ 109.

The Government recommends that the Court sentence the defendant to 18 months of incarceration, followed by 36 months of supervised release; a $100 special assessment; no fine; and no restitution.[2]

2.     The Probation Department Correctly Calculated The Defendant's Offense Level

In the defendant's objections to the PSR dated December 28, 2022 ("Objections"), the defense contends that he does not merit the three-level hate crime motivation enhancement pursuant to U.S.S.G. §3A1.1(a).  In particular, the defense claims that "Mr. Hanson did not, beyond a reasonable doubt, select [Merriam-Webster or the University of North Texas President] because he believed or knew they were people with the attributes listed in §3A1.1(a)."  *Id*. at 2.  Notably, the defense does not cite a single case in support of this proposition.

The defense misreads the plain language of Section 3A1.1(a):  "If the finder of fact at trial or, in the case of a plea of guilty or *nolo contendere*, the court at sentencing determines beyond a reasonable doubt that *the defendant intentionally selected <u>any victim</u> or any property as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of <u>any person</u>*, increase by 3 levels."  U.S.S.G. §3A1.1(a) (emphasis added).

Section 3A1.1(a) clearly does not limit the enhancement to targeting victims based upon their own status of a protected class.  Rather, it encompasses the selection of "any victim" based upon the actual or perceived status of "any person."  The Guideline clearly contemplates that the

---

[2] No victim has submitted a restitution request.

"victim" and the "person" need not be the same.

This plain reading of the Guideline makes abundant sense. To take one example from history, on June 21, 1964, Mississippi members of the Ku Klux Klan killed three civil rights field workers with the Congress of Racial Equality:  James Chaney, Andrew Goodman, and Michael Schwerner. Chaney, Goodman, and Schwerner were promoting voter registration among African Americans. Chaney was black, and Goodman and Schwerner were white.[3] To adopt the defendant's cramped reading of Section 3A1.1(a) as applied to these murders, the hate crime motivation would only apply to Chaney because he was black, and not to Goodman and Schwerner because they were white.

Here, in the Massachusetts case, the defendant targeted "any victim" (*i.e.*, the employees of Merriam-Webster) "because of the actual gender, gender identity, or sexual orientation of any person" (*i.e.*, transgendered people, whom he called the "tranny mafia"). The defendant stated his motivation emphatically:  "I am going to shoot up and bomb your offices for lying and creating fake definitions in order to pander to the tranny mafia." Similarly, in the Texas Case, the defendant selected the President of the University of North Texas "for supporting . . . transgenderism" and explained his motivation:  "Every single tranny freak should be gassed, along with their supporters." The enhancement thus clearly applies to both cases.

    3.    The Defendant Merits The Recommended Sentence

        a.    Legal Principles

As the Supreme Court explained in *Gall v. United States*, 128 S. Ct. 586, 596-97 (2007), the

---

[3] https://www.pbs.org/wgbh/americanexperience/features/freedomsummer-murder/

district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range, and then consider all of the factors in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested. The district court may not presume that the Guidelines range is reasonable, but must make an individualized assessment based on the facts presented. *Id.* at 597.

If the district court determines that a non-Guidelines sentence is warranted, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Id.* Obviously, a major departure requires greater justification than a minor deviation. *Id.* The district court's explanation must allow for appropriate appellate review and promote the perception of a fair sentencing. *Id.*

The Guidelines "serve as the starting point for the district court's decision and anchor the court's discretion in selecting an appropriate sentence." *United States v. Molina-Martinez*, 136 S. Ct. 1338, 1349 (2016). Starting with the Guidelines' framework helps promote uniformity and fairness. *United States v. Rodriguez*, 630 F.3d 39, 41 (1st Cir. 2010). In most instances, "the Guidelines are not only the starting point . . . but also the lodestar." *Molina-Martinez*, 136 S. Ct. at 1346.

In this case, the recommended sentence best represents the statutory sentencing goals articulated in 18 U.S.C. § 3553(a). As the Supreme Court observed in *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007), the sentencing judge and the Sentencing Commission are carrying out "the same basic 3553(a) objectives, the one at retail, the other at wholesale." In other words, the Sentencing Commission's guidelines are a "rough approximation of a sentence that might achieve § 3553(a)'s objectives." *Id.* at 2465. *See Gall*, 128 S. Ct. at 596 (stating "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and

4

initial benchmark.").

        b.      <u>The Nature And Circumstances Of The Offense</u>

            i.      <u>The Offense Is Serious</u>

The nature and circumstances of the offense are extremely serious. *See* 18 U.S.C. § 3553(a)(1). As set forth in far greater detail in the PSR, from approximately October 23, 2014, to March 21, 2022, the defendant transmitted in interstate commerce various threatening communications to various individuals and entities. He frequently selected the object of his threatening communications because of the gender, gender identity, and/or sexual orientation of various persons. He used various facilities of interstate commerce to communicate these threats, including e-mail, text message, web posting, and telephone calls. Perhaps most pertinent for the defendant's sentence, he continued this course of conduct in spite of repeated interactions with law enforcement officers who directed him to cease his threatening communications. PSR, ¶¶ 14 *et. seq*.

In the Massachusetts Case, the defendant transmitted four communications to the Merriam-Webster, Inc. dictionary company ("MWI"), culminating in the following post on October 8, 2021:

> I am going to shoot up and bomb your offices for lying and creating fake definitions in order to pander to the tranny mafia. Boys aren't girls, and girls aren't boys. The only good Marxist is a dead Marxist. I will assassinate your top editor. You sickening, vile tranny freaks.

Id., ¶¶ 18-23.

In the Texas Case, on March 3, 2022, Hanson sent the following threatening email from Killallmarxisttrannyteachers@usa.com to the President of the University of North Texas. The title of the email read: "You ought to be shot in the head and have your offices set on fire for supporting

child genital mutilation and transgenderism." The body of the email read:

> YOU LEFTIST FREAKS are the intolerant ones. Trannies are disgusting PERVERTS. Every single tranny freak should be gassed, along with their supporters. I will personally go to your university and start executing tyrannical leftist students and faculty who oppress conservatives. The only good Democrat is a dead Democrat.

Id., ¶¶ 24-25.

These threatening communications followed numerous other threatening communications, nearly all of which were motivated by the defendant's biases based upon race, gender, gender identity, and/or sexual orientation that the defendant issued to, among others:

(1) an Irish politician and Wikipedia (October 23, 2014 and June 1, 2015, respectively);

(2) The American Civil Liberties Union (April 19, 2020);

(3) Land O'Lakes (April 26, 2020);

(4) a New York City Rabbi (July 12, 2020);

(5) the founders of Sleeping Giants (January 15, 2021);

(6) Hasbro Toys (February 25, 2021);

(7) The Entomological Society of America (July 10, 2021);

(8) a Madison, Wisconsin Alderperson (August 8, 2021);

(9) IGN Entertainment and DC Comics (October 12, 2021 and October 16, 2021, respectively);

(10) two professors at Loyola Marymount University (January 6, 2022);

(11) Amnesty International USA (February 11, 2022);

  (12) California Governor Gavin Newsom and state office workers (March 2, 2022);

  (13) Walt Disney Co. (March 10-11, 2022)

  (14) USA Today and the United States Department of Health and Human Services (March 18, 2022); and

  (15) The Eau Claire, Wisconsin Area School Board (March 21, 2022).

Id., ¶¶ 26-50; D.32, Statement of Facts.

As the Victim Impact Statements ("VISs") submitted to the court *in camera* demonstrate, the defendant's threats caused great harm. According to one VIS submitted by a corporate entity:

> I interviewed all Consumer Affairs team members who received or read these posts by Mr. Hanson, and all were shocked, disturbed, and fearful of the content. As you can imagine, these Consumer Affairs Team members regularly receive not only complaints but also compliments about our products. In speaking with these colleagues, none, had ever received anything as disturbing as these messages which left them unsettled and frightened.

VIS x-426. Similarly, an individual victim explained:

> [The defendant's e-mail] came at a time when I was the target of an online harassment campaign, and Jeremy's email spoke loudly and clearly above the rest. Further, the threat was not only to me, but was to the community that I serve. In the wake of the murderous terrorist attack in Squirrel Hill, Pennsylvania, the Jewish community has been on edge countrywide. This email led me to be concerned further for the safety of my congregation, and since receiving it I have been far more wary and aware in my pulpit, watching every person who enters the sanctuary while leading services. Although I know he is not a physical or existential threat at this time, his willingness to put into words these direct words of violent hate has led me to be more wary of all strangers in my synagogue, simply due to the direct experience of their existence in this way.

> On top of this, his targeting of my identity as non-binary was further destabilizing. It is an aspect of my identity I have been wrestling with and trying to understand myself, but his focus on that aspect of who I am was the first time I had ever experienced direct hatred from that angle, and has certainly created more of a reticence to speak up and out about my gender.

VIS x-434.

        c.        History And Characteristics Of The Defendant

The personal characteristics of the defendant weigh in favor of the requested below-Guidelines sentence. *See* 18 U.S.C. § 3553(a)(1).

First, although the defendant falls within Criminal History Category I, his repeated deployment of threatening communications indicates that his criminal history category understates the seriousness of his criminal history. Second, the defendant has a history of ignoring law enforcement's efforts to dissuade him from engaging in these threats; in spite of repeated interviews by the FBI, the defendant persisted in issuing further threats, including the two charged in the Massachusetts and Texas Cases. Thus, it seems that only the instant prosecution caused him to cease his troubling conduct.[4]

However, perhaps the most salient feature of the defendant's personal history – and a characteristic that appears to implicate the first two concerns addressed above – is his problematic mental health. See PSR, ¶¶ 96, 99-100. Although the defendant's mental health issues suggest that he may be more likely to recidivate because he lacks sufficient impulse control, they warrant a slight reduction from his applicable Guidelines range. Further, the Government requests that the

---

[4] Law enforcement authorities interceded with the defendant on July 27, 2015; March 4, 2021; and October 27, 2021.

Court recommend mental health treatment as part of his custodial sentence as well as require mental health treatment as directed by the Probation Department as a condition of his supervised release.

        d.      The Need for the Sentence Imposed

Lastly, the requested sentence is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A) and to afford "adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(2)(B)-(C).

Here, the recommended sentence of imprisonment falls well below the bottom of the advisory guidelines range and serves all of these crucial sentencing goals. First, this sentence reflects the gravity of his offense. Next, the sentence is essential to promote respect for the law, since the defendant persisted in his misconduct in spite of repeated law enforcement admonishments. Third, the sentence is stiff enough to deter others from similar crimes. Lastly, the sentence is required to protect the public from further crimes of the defendant, who poses a substantial risk of recidivism. Compare *United States v. Taubert*, 810 F3d. Appx. 41, 44-45 (2d Cir. 2020) (affirming 46-month, low-end Guideline sentence for defendant based upon court's findings that defendant's "'hateful tirades' 'hurt people,'" defendant had not remediated his behavior in spite of repeated interactions with law enforcement, defendant was aware of the impropriety of his actions in spite of his mental health issues, and defendant had not accepted responsibility).

        4.      Conclusion

For the foregoing reasons, the Government respectfully asks that the Court impose a sentence of 18 months of incarceration followed by 36 months supervised release, and a $100 special

assessment.

                        Respectfully submitted,

                        RACHAEL S. ROLLINS
                        United States Attorney

By:   */s/ Steven H. Breslow*
       STEVEN H. BRESLOW
       (NY2915247)
       Assistant U.S. Attorney
       300 State Street, Suite 230
       Springfield, MA 01105
       413-785-0330
       steve.breslow@usdoj.gov

### Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:   */s/ Steven H. Breslow*
       STEVEN H. BRESLOW
       Assistant U.S. Attorney

Dated:   January 2, 2023